### ANDREW JACKSON v. STATE.

No. A-10197.    July 21, 1943.

(140 P. 2d 606.)

Paul V. Carlile, of Sallisaw, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

BAREFOOT, J.   Defendant, Andrew Jackson, was charged in the district court of Sequoyah county with the crime of rape in the first degree, was tried, convicted and sentenced to serve a term of 15 years in the State Penitentiary, and has appealed.

It is first contended that the judgment and sentence is contrary to the law and the evidence, and that the court erred in refusing to sustain a demurrer to the evidence.   This makes necessary a short review of the evidence and the law applicable thereto.

The charge against the defendant was that of rape by force of Ida Whitney, age 33 years, in Sequoyah county, on the night of November 21, 1940.

Prosecutrix had been divorced, and was the mother of four small boys, who were living with her near Sallisaw, in Sequoyah county.   On the date charged, she went to the home of a neighbor, Mrs. Elsie Lowe, for the purpose of getting a dress pattern.   While there she asked Mrs. Lowe if she would go with her to the home of her uncle, who lived in the country and was sick, if they could get "The Old Stove Man" to take them in his car, and Mrs. Lowe agreed that she would go.   She told Mrs. Lowe if she saw "The Old Stove Man" to ask him to take them.   She then went to the home of Mrs. Jackson, the wife of the brother of defendant, for the purpose of having the dress made.   She returned to the home of Mrs. Lowe, and then to her own home, and sent two of her sons to see "The Old

Stove Man" and get him to come to Mrs. Lowe's and get them. She returned to Mrs. Lowe's house, and just after dark Andrew Jackson, the defendant, came to the Lowe home, driving the car of Bill Williamson, who was known as "The Old Stove Man."

The evidence of prosecutrix, and of her son Jack Whitney and of Mrs. Lowe, was that defendant told them that Mr. Williamson could not come, but had sent him to take them to the uncle's in the country. That defendant said it would be necessary to go to a near-by store and get some gasoline, and that he would arrange the tools in the back of the car so that the children could ride there. Prosecutrix testified that he asked her to go with' him for the gasoline, and said they would return in a few minutes and get Mrs. Lowe and her two children, and the children of prosecutrix. They secured the gasoline, but instead of returning to get Mrs. Lowe and the children, defendant, despite the protests of the prosecutrix, drove into the country and, by force overcoming her resistance, had intercourse with her. She testified that when defendant became unduly familiar with her, she jumped from the car and started walking down the road. That he turned around and overtook her, and promised to take her to town, but that instead, he dragged her to the side of the road and by the exercise of force and fear overcame her resistance and had intercourse with her.

Defendant admitted having intercourse with prosecutrix, but stated that it was voluntary on her part.

After the completion of the act, defendant drove with prosecutrix to Sallisaw, and they went to a restaurant. Food was ordered, but when the defendant went to the rear to wash his hands, the prosecutrix left the premises and contacted the officers, to whom she related the facts with

reference to the assault that had been made upon her. Defendant was arrested the same night, and charges were filed against him.

Defendant admitted that he had been drinking during the day, and took two drinks from a bottle he had in the car just prior to the alleged offense. There is no evidence that prosecutrix had at any time drunk any liquor. Defendant also admitted that he had previously been convicted of the crime of burglary in Sequoyah county, and had served a term of 21 months in the State Penitentiary therefor.

The rules with reference to cases where one is charged with rape have been so fully discussed in cases recently decided by this court, that we deem it unnecessary to again review the many cases that have been decided. Some of these cases are: Weston v. State, 77 Okla. Cr. 51, 138 P. 2d 553; Coppage v. State, 76 Okla. Cr. 428, 137 P. 2d 797; McComas v. State, 75 Okla. Cr. 321, 131 P. 2d 488; Duggins v. State, 76 Okla. Cr. 168, 135 P. 2d 347; Gordon v. State, 75 Okla. Cr. 356, 131 P. 2d 503; and Kilpatrick v. State, 75 Okla. Cr. 28, 128 P. 2d 246; Williams v. State, 65 Okla. Cr. 336, 86 P. 2d 1015; Williams v. State, 68 Okla. Cr. 348, 98 P. 2d 937; Kitchen v. State, 61 Okla. Cr. 435, 69 P. 2d 411; Kitchen v. State, 66 Okla. Cr. 423, 92 P. 2d 860; and Kilpatrick v. State, 71 Okla. Cr. 129, 109 P. 2d 516.

These cases review the early decisions and again state the rules that have been so well established: First, that one may be convicted on the uncorroborated testimony of the prosecutrix; second, that where her evidence is uncertain, contradictory or improbable, or she has been impeached, that it will be required that her testimony be corroborated; and third, that the court will review the

whole record in cases of this character to see whether the evidence as a whole is sufficient to sustain the judgment and sentence to the end that justice may prevail, and injustice be avoided. In other words, that a case of this character is an exception to the general rule that where there is any evidence to sustain the same, the judgment and sentence will be upheld. This rule is sound in principle, because it gives to the court the right to correct an injustice, and at the same time to do justice, which is the true aim and purpose of the law. Weston v. State, supra; Sowers v. Territory, 6 Okla. 436, 50 P. 257.

Applying these rules to the evidence as revealed by the record in the instant case, we find that there is nothing which causes us to believe that the evidence of the prosecutrix in this case was untrue, unbelievable, contradictory, or that she was in any way impeached. Her testimony is corroborated by the evidence of a number of witnesses. It is unnecessary to lengthen this opinion by going into detail. The evidence of defendant is contradicted in a number of details, and by some of the witnesses whom he placed upon the witness stand. We therefore cannot say that the judgment and sentence is contrary to the law or the evidence.

It is next contended that the court erred in overruling the motion for continuance. This is based upon the absence of the witness Bill Williamson, "The Old Stove Man," and the fact that the attorney for defendant, the Hon. Paul V. Carlile, was a member of the Legislature and that 30 days had not expired from the time the Legislature had adjourned until the trial of defendant.

The motion for continuance by reason of the absence of the witness Bill Williamson does not comply with the terms of the Oklahoma statute. Sec. 3035 O.S. 1931, Tit.

22 O.S.A. 1941 § 768. There is nothing to show that diligence had been used to secure the attendance of the witness. or that his presence could be had at the next term of court. A copy of the subpoena, to show that one had been issued, was not attached to the motion or the affidavit. In fact, there was nothing to show that any subpoena.had been issued, and if so the date thereof, in order that the court might determine whether due diligence had been used in procuring the subpoena. There is further reason that the evidence which the motion sets out is not of sufficient importance to justify the granting of a continuance.

That part of the motion for continuance by reason of the fact that the Hon. Paul V. Carlile, attorney for defendant, was a member of the State Senate, and that the session of the Legislature for the year 1941 had not been adjourned for a period of 30 days at the time of the trial of defendant, is based upon that provision of Oklahoma Statutes Annotated, 1941, Title 12, § 667, which is as follows:

"The court may, for good cause shown, continue an action at any stage of the proceedings upon terms as may be just; provided, that if a party or his attorney of record is serving as a member of the Legislature or the Senate, sitting as a court of impeachment, or within thirty (30) days after an adjournment of a session of the Legislature, such fact shall constitute cause for continuance of the case, and all motions, demurrers and preliminary matters to be heard by the court, the refusal to grant which shall constitute error, and entitle such party to a new trial as a matter of right. * * *"

This court will take judicial knowledge of the fact that the session of the Legislature which convened in January, 1941, adjourned on May 23, 1941, only 24 days prior to the commencement of the trial of defendant; also that

the Hon. Paul V. Carlile was a member of the State Senate.

The facts with reference to the filing and trial of this cause as shown by the record reveal that the information was filed December 11, 1940. On June 3, 1941, the Judge of the district court of Sequoyah county entered the following order (omitting the caption):

"Defendant present in person without counsel and announces he is financially unable to employ counsel. Paul Carlile, a member of the bar, is appointed to represent the defendant. The defendant waives arraignment, time to plead, and pleads not guilty; served with a copy of information and a list of state's witnesses. Case set for trial Wednesday, June 18th, 1941."

That on June 16, 1941, a motion for continuance was filed, the second paragraph of which is as follows:

"That Paul Carlile, attorney of record for Andrew Jackson, defendant, is serving as a member of the Legislature of the State of Oklahoma, and that the 30 days allowed by law before any member of the Legislature can be forced to trial has not yet expired, after adjournment."

At the time the court overruled the motion for continuance, he gave as a reason therefor the following:

"The Court: The record may show that counsel for defendant has filed his motion for a continuance herein for the reason and on the ground that he is a member of the State Senate and 60 days has not at this time expired since the adjournment of the recent session of the Legislature. The record may further show in this connection that at the time defendant was arraigned, this docket had been set with the defendant to be tried on this date, and that upon the application and request of the defendant, Senator Carlile was appointed to defend him as a poor person. At the time of his appointment both the defend-

ant and his appointed counsel knew that the case was expected to be tried on its setting and no objection was made by counsel at the time to the fact that his legislative exemption would not have expired on this date, nor did he ask to be relieved of the appointment on that account, nor does he now do so, but he accepted the appointment and witnesses for the state have been summoned and are in attendance, and the court does not think that counsel is in a position to insist upon his legislative exemption from forced trial under all the circumstances, but that his Legislative exemption must be deemed to have been waived. Not only so, but counsel's Legislative exemption of 60 days will expire during the time of this setting and while the jury is still in attendance, and if his counsel had asked that the case stand over to a later day of the setting, and until his 60 days had expired, same could be done and the witnesses brought back and defendant tried on this setting, but counsel does not ask this, but only asks a general continuance, which the court does not feel is justified or required under all the facts surrounding the arraignment, appointment of counsel, and setting of the case.

"The record may further show that the motion of defendant for a continuance on the ground of the absence of material witnesses is also denied for the reason that the defendant does not show that he even knows where his alleged witness lives, nor is there any showing made that he would ever be able to obtain service of subpoena upon this witness for his attendance upon a trial which might be set at any future time. A subpoena was issued for the witness Bill Williamson, directed to the sheriff of this county and the same was returned 'not found.' The motion for a continuance will therefore be overruled on all grounds, and the defendant allowed an exception." (Note: In this statement it will be observed that the court refers to the Legislative exemption of "sixty" days, which is probably a typographical error, as it should be "thirty" days.)

This court has had occasion to construe the statute above quoted upon numerous occasions, both before and after the amendment by the Legislature in 1937, when the period of time of exemption was increased from 10 to 30 days after the adjournment of the Legislature. This is the first instance where we have been called upon to construe the section with reference to the "adjournment" clause of the statute.

It will be noted from the record that the appointment of Senator Carlile was after the adjournment of the Legislature. It was not in session at the time of the appointment, nor was he in attendance upon the Legislature at the time of his appointment, or at the time of the trial of the case. The Legislature had been adjourned for 24 days, which left only six days before the expiration of the 30 days.

From the record, and the statement made by the trial court at the time of passing upon the motion, we are of the opinion that the rule announced by the majority of the court in the case of Holloway v. State, 37 Okla. Cr. 24, 255 P. 1022, 1023, should be applied in this case. It is there said:

"The purpose of this statute was, no doubt, to encourage members of the bar to become candidates for the lawmaking body of the state, and to protect a defendant whose attorney, presumably familiar with his case, could not attend his trial by reason of official duty, and to protect members in their business while serving the state in this capacity by preventing trials of cases where they are attorneys of record during a session of the Legislature and for ten days thereafter; that during this time they should not be disturbed in their duties as lawmakers. The privilege of a continuance as a matter of right applies only to a defendant whose attorney of record is a member of the Legislature. A member of the Legislature, during

a session of the Legislature, also has the right to contract for any new business presented to him, and, if such business arises during a session of the Legislature, and he is employed, he would then be entitled to the benefits conferred by this statute. But, where an accused against whom a prosecution is pending prior to the convening of the Legislature, and who prior to such time has employed counsel as his attorney of record, he may not during a legislative session, by employing a member of the Legislature, procure a continuance on that ground as a matter of right. To give the statute the construction here contended for would put it in the power of every defendant at his pleasure to continue his case during a session of the Legislature. This we think is contrary to the spirit and meaning of the act in question.

"Under the facts presented in this case defendant's application did not entitle him to a continuance as a matter of right, but such application was addressed to the sound discretion of the trial judge, and, no abuse of such discretion being apparent, the overruling of such application is not error."

The opinion in this case was written by Judge Edwards, and concurred in by Judge Doyle. Judge Davenport wrote a dissenting opinion in which he held that a continuance should have been granted as a matter of right.

In the case at bar, the appointment of Senator Carlile was made after the adjournment of the Legislature. At the time of the appointment, June 3, 1941, the case was assigned for trial for June 18. No objection or excep- was taken, and it was not until June 16th that a motion for continuance was filed. This statute should be construed liberally and with reference to the intent of the Legislature at the time of the passage of the same. One of the main purposes was that the members of that body should not be interfered with in their official duties. It was not intended that the act should be construed in such

manner that it would defeat justice. This has been the interpretation placed upon the act by this court. In all of the cases where the statute has been held applicable, the Legislature was in session at the time of the trial, and the member had become counsel prior to the convening of the Legislature. In the instant case, neither of these conditions existed. Counsel was appointed after the Legislature adjourned, and no showing was made that he could not act by reason of his official duties. We are, therefore, of the opinion that the construction placed upon this statute by the trial court was right, and that by reason of the facts, as they here exist, the court was vested with the discretion of deciding whether a continuance should be granted, and that this discretion was not abused.

It is next contended that the court erred in admitting certain evidence of the witness Bert Cotton, undersheriff of Sehuoyah county.

When the prosecutrix left the restaurant on the night of the assault, she went to a drugstore and asked for the officers of the law. This witness came, and took her home. He testified to her appearance and condition, and that she told him of the assault that had been made upon her by the defendant. This evidence was clearly admissible under the law. Coppage v. State, supra, 44 Am. Jur. p. 953, § 84, and cases cited.

The court then permitted the witness to give a somewhat detailed account of what prosecutrix said as to how the offense was committed. This part of the evidence of this witness was incompetent. The trial court admitted it upon the theory that it was a part of the res gestae, but in our opinion the length of time was too great for it to be considered as a part of the res gestae. The prosecutrix had left the scene of the alleged assault and had gone with

the defendant to the city of Sallisaw, a distance of some six miles. She had then entered a restaurant and ordered food, and afterwards left and went to a drugstore and called the officers. This detailed conversation was given some time thereafter. We have found no case or authority which would justify the admission of this evidence as a part of the res gestae under the circumstances such as existed here. Price v. State, 1 Okla. Cr. 358, 98 P. 447; 44 Am. Jur. p. 955, § 85; Regnier v. Territory, 15 Okla. 652, 82 P. 509; Womack v. State, 36 Okla. Cr. 44, 253 P. 1027.

This question was fully reviewed and the authorities cited in the Coppage Case, supra. In that case we held that the evidence was prejudicial to the defendant. The case was reversed for this and other reasons. Here the evidence is sufficient to sustain the conviction without this evidence, and there is no reason to believe that he was prejudiced by reason thereof. In the Coppage Case we said: "Each case to some extent must stand on the facts of that particular case." This statement is supported by the authorities in general. By reason of the extensive review in the Coppage Case, it is unnecessary to further discuss it here.

It is provided by Oklahoma Statutes, 3206, O.S. 1931, Tit. 22 O.S.A. 1941 § 1068:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

In construing this statute it has often been held that a case will not always be reversed because of "improper admission or rejection of evidence," unless "after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." Wilcox v. State, 69 Okla. Cr. 1, 99 P. 2d 531; Johnson v. State, 70 Okla. Cr. 270, 106 P. 2d 149; Rickman v. State, 70 Okla. Cr. 355, 106 P. 2d 280; Knox v. State, 34 Okla. Cr. 300, 246 P. 665; Carter v. State, 6 Okla. Cr. 232, 118 P. 264; McKee v. State, 75 Okla. Cr. 389, 132 P. 2d 173.

The minimum punishment under the statute is 15 years in the penitentiary, 21 O.S. 1941 § 1115, and as we have often stated, this court is not permitted to reduce the punishment where the minimum is assessed. We have no hesitancy in stating that under the circumstances in this case, we would be very much inclined to modify the punishment if permitted to do so. This, however, is a matter for the Legislature to consider if desired, or by executive clemency of the Governor under the power given him by the Constitution. Art. 6, § 10.

Finding no substantial error in the record, and that defendant was not prejudiced by any error that may have been committed, the judgment and sentence of the district court of Sequoyah county is affirmed.

JONES, P. J., and DOYLE, J., concur.