**In the Matter of the Termination of Parental Rights of Betty Jo COTTER, Appellant,**

v.

**Stewart HUNTER, District Judge, Oklahoma County, Oklahoma, and the Department of Institutions, Social and Rehabilitative Services, State of Oklahoma, Appellees.**

**No. 47525.**

Supreme Court of Oklahoma.

Sept. 16, 1975.

Ralph Samara, Oklahoma City, for appellant.

Donald L. Ritter, Oklahoma City, for appellees.

BARNES, Justice:

Pursuant to a verified petition filed on April 13, 1973, which alleged that Vickie Moon, Loretta Moon, Patricia Cotter, David Cotter and Elizabeth Cotter were dependent and neglected as a result of a

criminal information filed against William J. Cotter charging him with manslaughter in the first degree, alleging that he killed William A. Blair, a minor, his stepson and natural child of Appellant, Betty Jo Cotter, the court ordered the said children to be temporarily placed in the custody of the Department of Institutions, Social and Rehabilitative Services of the State of Oklahoma.

On May 8, 1973, a second amended petition was filed alleging that the home of the Appellant and her husband is an unfit environment for said children by reason of neglect, cruelty and depravity, and that the home conditions are detrimental to the physical and mental health and morals of the children.

On May 18, 1973, a jury found that the children were dependent and neglected, and the court continued the case until June 12, 1973, for disposition.

On the 12th day of June, 1973, the court ordered Vickie Moon committed to the custody of her father, Kenneth Moon, and the other four minor children were placed in the custody of the Department of Institutions, Social and Rehabilitative Services. The court further ordered that the home of the mother, Appellant, be investigated and evaluated and a full report be submitted to the court.

On September 28, 1973, William J. Cotter was convicted by a jury for manslaughter in the first degree and sentenced to seven years in the State Penitentiary, with the latter three and one-half years suspended.

On November 6, 1973, Appellant filed her verified application alleging that she had corrected the dependent and neglected conditions and requested the custody of her children.

On November 28, 1973, a supplemental petition was filed requesting that the parental rights of William J. Cotter and Appellant be terminated.

On December 10, 1973, Appellant filed her answer and cross-petition to the supplemental petition.

On December 11, 1973, at Appellant's request for additional time to correct the situation causing dependency and neglect, the court continued the matter to May 6, 1974.

On April 23, 1974, Appellant was granted a divorce from William J. Cotter.

On May 6, 1974, pursuant to a hearing, the court ordered the termination of the parental rights of the Appellant and her ex-husband, William J. Cotter. The Appellant appealed.

The Appellant contends that the court denied her a fair and impartial trial. In support of her claim of an unfair trial, the Appellant cites *State ex rel. Larecy v. Sullivan*, 207 Okl. 128, 248 P.2d 239; *State ex rel. Wade v. Crawford*, 178 Okl. 230, 62 P.2d 620; *Pitman v. Doty*, Okl., 441 P.2d 428, and *Sadberry v. Wilson*, Okl., 441 P.2d 381. These cases involved judges who had a disqualifying interest in the case or a judge who continued to issue orders in a case pending a hearing on a writ of prohibition and mandamus seeking his disqualification. This is not the situation here.

The Transcript reflects the court's desire to determine what was in the best interest of the children, or, more particularly, to determine if the Appellant could provide the protection and care necessary for the welfare of her children.

Appellant contends that the court erred in questioning witnesses. See *Jones v. State*, Okl., 456 P.2d 613, where the Court of Criminal Appeals stated:

"A trial judge has the right, in the exercise of his discretion, to ask of any witness such questions as will tend to elicit the truth, and so long as the judge does not, by his questions or conduct, indicate his views as to matters at issue, a defendant will not be heard to complain of any question asked by him which is reasonably calculated to elicit truth."

A careful examination of the record indicates the court's interest was in the welfare of the children and not a personal interest in the outcome of the case. We find that such questions were in accord with *Jones v. State*, supra.

■ Appellant further contends that the conviction of the stepfather for manslaughter renders the matter of the child's death res judicata as to the mother's fitness in a separate judicial proceeding.

The issue in the case at bar as to the natural mother was not whether the stepfather committed a felony—it was the natural mother's ability or inability to care for and protect her young children from conditions of depravity and from conditions of non-accidental death that concerned the court. To reach this issue, it was vitally necessary for the trial court to understand the natural mother's participation in the care of her children and particularly important to understand her activities up to and including the day of the death of one of her six children, as well as her subsequent conduct.

The issues in the two separate proceedings are so markedly adverse to one another and so completely different as to parties and questions that res judicata is not applicable.

■ Lastly, the Appellant contends that the evidence properly before the court was insufficient to support the decision to terminate, under the provisions of 10 O.S. § 1130. In this regard, a court must determine that a parent or parents have failed to give the child the parental care or protection necessary for his physical or mental health and that the parent has failed to show that the conditions have been corrected within six months after adjudication of dependency or neglect.

In the syllabus of *McNatt v. State*, Okl., 330 P.2d 600, this Court stated:

"In proceedings to determine the permanent custody of a dependent or neglected minor child, the judgment of the trial court will not be disturbed when it

is not clearly against the weight of the evidence nor contrary to law."

In this case, the trial judge observed the witnesses and weighed the evidence. He found that "The evidence to this Court is that it is not only in the best interests of these children but necessary for their physical and mental health and their protection physically, that their rights be terminated * * *."

■ There has been no abuse of discretion or law based upon the evidence presented. The Appellant asserts that the great weight of evidence supports a showing of changed conditions, but the only evidence presented by the Appellant was her own testimony. The trial court judge, who was in the best position to observe her demeanor and attitude in court, was unconvinced that there was any change in her ability to care for and protect her children.

In accord with the foregoing, the judgment of the trial court is affirmed.

All Justices concur.